71 1023
72 654

ALFRED JONES, ADM'R, v. BANK OF CARROLLTON.

1. ESTATE OF DECEDENT. *Contingent liability. Registration. Code* 1880, § 2028.

Where a dispute arises between a bank customer and the cashier as to whether certain money was delivered to the latter for deposit, and, pending a suit by the customer against the bank for the amount, the cashier dies, his contingent liability to re-imburse the bank, on the ground that he had not paid in the money, being dependent upon the result of such suit, is not such a claim as is required by § 2028, code 1880, to be registered against his estate within one year after notice to creditors.

2. SAME. *Competency of witness. Code* 1892, § 1740.

One who delivers money to a bank cashier for deposit, and afterwards recovers the amount by suit against the bank, is not incompetent, under § 1740, code 1892, as a witness to maintain its suit for re-imbursement against the estate of the cashier, who has meantime died, and who, it is claimed, failed to pay the money in.

3. SUPREME COURT. *Chancery decree. Presumptively correct.*

A decree on contested facts will not be reversed unless the court is convinced that it is opposed to the preponderance of the evidence.

FROM the chancery court of the first district of Carroll county.

HON. T. B. GRAHAM, Chancellor.

In January, 1891, appellee, the Bank of Carrollton, had for its cashier one J. M. Jones, who had general charge of its affairs. J. T. Holman, treasurer of Carroll county, was a depositor of the bank. It was the custom of Holman and the bank, acting through its cashier, when it became necessary to account to the board of supervisors, that Holman should give to the bank his check for the amount to his credit, take the money before the board to be counted, and then return the same money to the bank, taking up his check, no entry being made of the transaction on the books of the bank. On January 9, 1891, he thus checked out his balance of $1,779.22, to be used in settlement with the board, and

he claims to have re-deposited it on the next day.    On
March 5, 1891, he made another settlement with the board,
at which time, he testifies, he thought he had enough money
to his credit in the bank to make the settlement.   He called
on the cashier for the balance of his official funds on deposit,
when he found that he was short $2,679.22.    This amount
he claims to have made up in his settlement with the county.
Thereupon, he says, a dispute arose between him and Jones,
the cashier, the latter claiming that his balance was $3,615.61,
while he (Holman) contended that it should be something
over $6,000.   He further states that when shown the items
of his account, he contended that he had returned the
$1,779.22, January 10, and had taken up his check, which
he then exhibited to the cashier.    On the books of the bank
he was charged with the amount January 9, but there was
no credit for it.

On May 21, 1891, Holman brought suit against the bank
in the circuit court for said sum of $1,779.22, and, on January
22, 1892, filed an amended declaration, claiming an additional
sum of $900.    At the October term, 1892, he recovered judg-
ment against the bank for said sum of $1,779.22 and interest,
and, on December 29, 1892, the bank paid this judgment.

Meantime, on August 6, 1891, Jones, the cashier, died,
and, on September 14, 1891, letters of administration on his
estate were issued to appellant, Alfred Jones.   On Septem-
ber 19, 1891, publication was made to creditors of the estate
to present and register their claims, in accordance with
§ 2027, code 1880.

On February 7, 1893, the bill in this case was filed by the
bank against said administrator, alleging that the said sum
of $1,779.22 had been diverted by the said Jones, or allowed
to be diverted, and that the amount had not been placed
among the funds of the bank.    The prayer was for a decree
against his estate for the same, with interest.    The bill al-
leges that the claim had not been probated against the estate
of Jones because many of the facts connected with the

transaction had not been discovered by the officers of complainant until after the expiration of the time allowed for presenting claims; and, further, that the liability was contingent, and that the claim was, therefore, not required to be probated. Defendant answered, denying the material allegations of the bill. Complainant's testimony tended to establish the truth of its allegations, while that of the defendant was directed to the effort of showing that the money was never received by the deceased.

There was a decree in favor of complainant for said sum ·of $1,779.22, with interest. Defendant appeals. The opinion contains a further statement of the case.

*Marcus Askew*, for appellant,

After an elaborate discussion of the facts, made the following points as to the questions of law passed upon by the court: Holman was an incompetent witness. His claim against the bank was identically the same as the bank's claim against the estate of Jones here sued on. By paying the judgment against it, the claim of Holman was transferred by operation of law to it, and, therefore, Holman is incompetent as a witness against the estate of Jones. *Reinhardt* v. *Evans*, 48 Miss., 230. This case was overruled by *Rothschild* v. *Hatch*, 54 Miss., 554, but re-established by *Jones* v. *Sherman*, 56 *Ib.*, 559, and is the law now. Code 1892, § 1740; *Jacks* v. *Bridewell*, 51 Miss., 881.

The demand is a "claim" within the meaning of § 2028, code 1880, and not a contingent liability or inchoate right. It was, therefore, necessary to probate it. This case is distinguishable from *Harris* v. *Hutcheson*, 65 Miss., 9, in that here there was no action against Jones during his life and revived against his representative. No demand had ever been made against Jones before his death, or against his administrator before the one year expired.

*Calhoon & Green* and *J. E. Gwin*, on the same side,

Filed separate briefs devoted exclusively to a discussion of

the evidence, contending that the decree is not supported by a preponderance of the evidence, and that there was required at least the uncontradicted testimony of one witness to entitle complainants to a decree; that the most important witness for defendant was dead, and that Holman, the only other person directly cognizant of the transactions, and on whose testimony the decree rests, is overwhelmingly contradicted by the proven facts.

*Percy R. Somerville*, for appellee.

1. The claim sued on is not such as is provided for by § 2027, code 1880, and it was not necessary to probate it. *Gordon* v. *Gibbs*, 3 Smed. & M., 473; *Harris* v. *Hutcheson*, 65 Miss., 9.

2. The question whether Holman was a competent witness is decisive of the case. That he was competent, see *Faler* v. *Jordan*, 44 Miss., 283; *Hedges* v. *Aydelott*, 46 *Ib.*, 99; *Rheinhardt* v. *Evans*, 48 *Ib.*, 230; *Rothschild* v. *Hatch*, 54 *Ib.*, 554; *Sweatman* v. *Parker*, 49 *Ib.*, 19; *Wood* v. *Stafford*, 50 *Ib.*, 370; *Jacks* v. *Bridewell*, 51 *Ib.*, 881; *Jones* v. *Sherman*, 56 *Ib.*, 559; *Love* v. *Stone*, *Ib.*, 449; *Gordon* v. *McEachin*, 57 *Ib.*, 834; *Ellis* v. *Alford*, 64 *Ib.*, 8; *Cole* v. *Gardner*, 67 *Ib.*, 670; *Jackson* v. *Smith*, 68 *Ib.*, 53; *Jones* v. *Warren*, 70 *Ib.*, 227. *Gordon* v. *McEachin*, *supra*, is conclusive.

The contention that Holman's claim has, by operation of law, been transferred, and that he is, therefore, incompetent, is not sound. The liability charged in the bill is essentially different from that to Holman.

3. The decree is correct on the evidence. Appellee, at its own expense, defended the action, and, after verdict against it on the evidence, paid the judgment. The enlightened conscience of the chancellor has concurred with that finding of fact. It certainly cannot be said to be manifestly wrong, and this court will not disturb the decree.

WOODS, J., delivered the opinion of the court.

The demand of appellee against appellant's intestate was

not of such a character as required its registration within one year after the first publication of notice to creditors to present their claims. It was a contingent liability, whose existence was dependent upon a fortuitous event, which did not happen until the year had expired. It seems impossible to see how the oath prescribed by § 2027, code 1880, could have been made and indorsed upon the contingent demand, if any officer of the bank had been found rash enough to make the venture and incur the hazard of so doing.

Holman was not an incompetent witness on the trial of this cause below. He was not testifying to establish his own claim against the estate of the decedent, which originated during the life-time of the deceased, or any claim which he had transferred since the death of such decedent. The contention of appellant's counsel is that Holman was incompetent as a witness to testify to establish the bank's claim, because it was his claim originally, and had been transferred to the bank, after the death of appellant's intestate, by operation of law, the bank having been compelled to pay that sum to Holman, by a judgment of the proper court, whereby it became entitled to repayment out of the estate of the deceased. But the learned counsel misconceive the facts. Holman had no claim against the bank's cashier. He did not deal with the servant of the bank, but with the bank itself, and his demand for the loss of his funds intrusted to the bank was against it. He had successfully asserted his claim upon the bank, and had been fully paid and satisfied by it after judgment. At the trial of this cause, as well as at the date of its institution, he had no claim against any one on account of the transaction complained of in the present case. His claim against the bank and the bank's claim against its cashier arose out of one and the same transaction, but they were two distinct claims, and not one claim transferred, by operation of law, from Holman to the bank, after the cashier's death. His claim against his debtor had been fully paid, and, the contingency having arisen whereby the bank's claim against

its servant came into existence, Holman was a competent witness for the bank in its suit against its debtor.

Outside of these two legal questions, the controversy will be found to depend for its determination upon the facts and circumstances solely.   These facts and circumstances have had anxious and repeated examination.   It will not be extravagant to say that the bank's case is made out, if made out at all, by the evidence of one witness.   The evidence of this witness is clear, positive and overwhelming, if worthy of credence.   The effort of the appellant is to demonstrate its untrustworthiness, not by any direct attack upon the character of the witness, or by countervailing evidence upon the disputed transaction.   The zeal, the learning, the skill of the able counsel for appellant are directed to a masterly arraignment of the credibility of the witness, in the light of the suspicious circumstances attendant upon the testimony and conduct of the witness as made out and disclosed by himself.   We are frank to say that there are circumstances exciting suspicion and distrust, chiefest of which is the utterly indefensible official misconduct of the witness in concealing the fact of his possession of the railroad tax funds from the board of supervisors at its March meeting, and his counting that large sum, to hide his deficit, in other funds. But, despite the suspicions engendered, we cannot say that the testimony of the witness is either false or incredible wholly.   He is supported by the conceded reputation of an honorable life hitherto.   His version of the transaction is not so unreasonable as to make it incredible, in view of the custom and course of dealing between himself and the bank, and some strongly corroborative circumstances appear in the record.   He did not wait until the cashier was dead before making his loss known; but, while that official of the bank was yet alive and in health and strength, the witness began his suit, and with but brief delay, for the recovery of his money.   That it was his practice to withdraw all funds from the banks when he was to make his count before the board

of supervisors, seems fairly made out by the books of both banks where he deposited. It is certain, too, that in one other instance at least, he redeposited in bank a large sum drawn out for count before the board of supervisors, and received, as the sole evidence of such redeposit, his check given the bank when he drew out the money—a check stamped "paid" on its face, with the official stamp of the bank, and pierced with the peculiar hole made by the bank's file-hook—just as in the transaction which gave rise to this litigation, as deposed to by the witness.

It is well settled that the decree of the court below must be regarded as presumptively correct, and that we will not be warranted in reversing it on the facts, unless convinced that it is opposed to the preponderance of the evidence. A painfully anxious and exhaustive consideration of the evidence in the case fails to satisfy us that the decree is not supported by sufficient evidence, and it must, therefore, be

*Affirmed.*